UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CENTER FOR MEDICARE ADVOCACY, INC., | : |
| | : |
| Plaintiff, | : |
| | : No. 3:10cv645 (MRK) |
| v. | : |
| | : |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

Plaintiff, the Center for Medicare Advocacy, Inc., filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain records related to the so-called "improvement standard" that is allegedly used by Defendant Department of Health and Human Services ("HHS"), and by insurers with which HHS contracts, to deny or terminate Medicare coverage. Pending before the Court are Defendant's Motion for Summary Judgment [doc. # 24] and Plaintiff's Cross-Motion for Summary Judgment [doc. # 32]. On May 17, 2011, the Court heard oral argument on the parties' cross-motions. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment.

**I.**

The relevant facts in this case are undisputed. The Center for Medicare Advocacy ("the Center") is a non-profit advocacy group that is currently litigating a case in the District of Vermont, *Jimmo v. Sebelius*, No. 5:11cv16-cr (filed Jan. 18, 2011), regarding the legality of the so-called "improvement standard" for determining eligibility for Medicare coverage. According

to the Center's own literature, the improvement standard requires Medicare beneficiaries to show that treatments will improve their medical conditions – as opposed to simply maintaining them – in order to qualify for coverage. Also according to the Center's own literature, the improvement standard has the effect of denying Medicare coverage to people with chronic illnesses.

This case revolves around the Center's attempts to obtain documentation about the so-called improvement standard through FOIA requests. The Center sent the FOIA request at issue in this case to the Centers for Medicare and Medicaid Services ("CMS") – the agency within HHS that administers Medicare – on November 17, 2009. The Center requested documents pertaining to the training that CMS provides to its employees regarding the improvement standard; the training that CMS contractors under Medicare Parts A and B provide to their employees regarding the improvement standard; and the training that Medicare Advantage Plans which contract with CMS under Medicare's Part C provide to their employees regarding the improvement standard.

Medicare benefits are divided into four "parts" under the governing statute – Part A, *see* 42 U.S.C. §§ 1395c to 1395i-5; Part B, *see id.* §§ 1395j to 1395w-4; Part C, *see id.* §§ 1395w-21 to 1395w-29; and Part D, *see id.* §§ 1395w-101 to 1395w-152. The Eleventh Circuit recently summarized the distinctions among the four parts:

> Part A provides hospital, skilled nursing, home health, and hospice care benefits. Part B provides physician and other outpatient services. Part D provides outpatient prescription drug benefits. The traditional Medicare structure allows beneficiaries access to Parts A, B, and D as separate benefits. Part C provides beneficiaries with an option to instead obtain the benefits available under Parts A and B as well as some additional benefits through a health insurance plan, known as a "Medicare Advantage Plan," administered by a private company.

*Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1046 (11th Cir. 2008) (citing *Matthews v. Leavitt*, 452 F.3d 145, 147 n.1 (2d Cir. 2006)). CMS uses contractors to process and pay

Medicare Part A and Part B claims on its behalf. *See* Def.'s Supplemental Local R. 56(a)1 Statement [doc. # 38-1] ¶ 30; 42 U.S.C. §§ 1395h, 1395u. The insurers with which CMS contracts under Medicare Part C provide qualified individuals with almost all of the benefits that would be available under Parts A and B "in exchange for monthly payments . . . from the government." *Matthews*, 452 F.3d at 147 n.1 (citations omitted); *see* 42 U.S.C. § 1395w-23.

During late February 2010 and again in late May 2010, the Center for Medicare ("CM") – which is the successor to CMS following a reorganization of certain components of HHS – provided the HHS FOIA Group with records responsive to the Center's FOIA request. All responsive records in the program area, totaling 140 pages, were fully released to the Center. CM also informed the FOIA Group that it had forwarded the requests to two other HHS components. Those components ultimately informed the FOIA Group that they did not possess any responsive records. After the Center's attorney voiced concerns that the volume of documents provided was not commensurate with the historical importance of the subject matter of the request, the CMS FOIA office voluntarily initiated an additional supplemental search, requesting that CMS's Medicare Administrative Contractors and legacy contractors, which pay both Part A and Part B Medicare claims, search for responsive records. As a result of that request, five of those contractors provided records, many of which were excerpts from publicly available CMS manuals and other known resources. Those records were released to the Center in two responses in October and November 2010, totaling 1,892 pages of hard copy records and a CD containing 71 electronic files. Other contractors responded stating that they did not possess responsive records, or that they relied on CMS's publicly available manuals and other materials. CMS's supplemental search was directed only to, and limited to the records of, contractors for Medicare

Parts A and B. It did not extend to the records of Medicare Part C contractors – that is, the Medicare Advantage Plans.

II.

Since the parties agree that the materials submitted to the Court "show[] that there is no genuine issue as to any material fact," one of the cross-movants must be entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this case, the legal question is whether CMS's search of its records in response to the Center's FOIA request was adequate. The Center argues that CMS's search of its records in response to the Center's request for records of training provided to employees of the Medicare Advantage Plans – the Medicare Part C contractors – was inadequate because CMS did not seek out records held by the Medicare Part C contractors themselves. HHS argues that "the legal authority governing [HHS's] FOIA response delineates Part A and Part B contractors, but not Medicare Advantage/Part C plans, as part of HHS for FOIA purposes." Mem. in Opp'n to Pl.'s Cross-Mot. for Summary J. [doc. # 37] at 4. Therefore, HHS argues, CMS was not required to seek out the Part C contractors' records in response to the Center's FOIA request. The Court agrees with HHS that FOIA does not obligate the agency to seek out the records of sponsors of Medicare Advantage Plans under Medicare Part C.

A.

Under FOIA, an agency is required only to conduct a search of "agency records." FOIA defines "agency" as an "authority of the Government of the United States," 5 U.S.C. § 551(1), including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . ., or any independent regulatory agency." *Id.* § 552(f)(1). Information constitutes a "record" subject to disclosure under FOIA only if it is "maintained by an agency in [some] format, including an

4

electronic format," or "maintained for an agency by an entity under Government contract, for the purposes of records management." *Id.* § 552(f)(2). The Supreme Court has held that "[f]or requested materials to qualify as 'agency records,' two requirements must be satisfied: (i) an agency must either create or obtain the requested materials, and (ii) the agency must be in control of the requested materials at the time the FOIA request is made." *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 479 (2d Cir. 1999) (quoting *United States DOJ v. Tax Analysts*, 492 U.S. 136, 145 (1989)) (quotation marks omitted). HHS's own rule defining "agency" for FOIA purposes states that "[a] private organization is not an agency even if it is performing work under contract with the Government." 45 C.F.R. § 5.5. The definition specifies that "contractor records are not subject to FOIA unless they are in the possession or under the control of HHS or its agents." *Id.* Since the Supreme Court has stated that materials only qualify as "agency records" if they *both* were obtained or created by the agency *and* are under the control of the agency, the Court interprets this last provision of HHS's rule to emphasize that even when contractor records were originally created or obtained by HHS, those records are not "agency records" for FOIA purposes unless they remain in the possession or under the control of HHS.

According to a 1987 regulation, Medicare Part A and Medicare Part B contractors are treated as part of HHS for FOIA purposes. *See* 45 C.F.R. § 5.5. Specifically, HHS is defined as "includ[ing] Medicare health insurance carriers and intermediaries to the extent they are performing functions under agreements entered into under sections 1816 and 1842 of the Social Security Act, 42 U.S.C. 1395h, 1395u." Those two sections provide for the administration of Medicare Parts A and B, respectively. *See* 42 U.S.C. §§ 1395h, 1395u. There is no regulation that defines Medicare Part C contractors as part of HHS for FOIA purposes.

**B.**

At oral argument, the Center's counsel confirmed that the Center wants to obtain the training materials with regard to the improvement standard used by each private insurer under Medicare Part C.

It is clear that the Medicare Advantage Plan records sought by the Center were not created or obtained by HHS and are not in the control of HHS. Under Supreme Court precedent, an agency is "in control" of the records "if the materials have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145. Moreover, with regard to the "created or obtained" prong of the standard, "FOIA applies to records which have *in fact* been obtained" or created. *Forsham v. Harris*, 445 U.S. 169, 186 (1980) (emphasis in original). The Center does not allege that the information it seeks from the Medicare Part C contractors came into HHS's possession at any point – let alone "in the legitimate conduct of [HHS's] official duties." *Tax Analysts*, 492 U.S. at 145.

The D.C. Circuit has held that it is possible for an agency to *constructively* obtain and control records for FOIA purposes. *See Burka v. United States HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996). That rule has not been adopted by the Second Circuit, and it is arguably in tension with the Supreme Court's statements in *Tax Analysts* and *Forsham*. *See Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 275 (S.D.N.Y. 2009) ("The Supreme Court's teachings in *Tax Analysts*, *Forsham*, and *Kissinger* [*v. Reporters Commission for Freedom of the Press*, 445 U.S. 136 (1980),] certainly do not compel adoption of the constructive obtainment and control theory . . . ."). Although the Center did not cite *Burka* or invoke the D.C. Circuit's constructive obtainment/control standard, the Court notes that even under that standard, the documents held by the Part C contractors would not be deemed "agency

records," since there is no allegation that the agency exercised "extensive supervision and control" over the production of the records, *Burka*, 87 F.3d at 515 (discussing constructive obtainment); and the Center has offered no evidence that the Part C contractors intended to relinquish control over the records to HHS, that HHS had the ability to use and dispose of the records as it saw fit, that HHS personnel read or relied on the records, or that the records were in any way integrated into HHS's record system or files. *See id.* (describing the D.C. Circuit's four-factor control test).

Indeed, the Center does not argue that CMS or any other division of HHS created or obtained those records, or that any division of HHS is in control of the records. Instead, the Center suggests that to the extent that the Medicare Advantage Plans administer Medicare benefits under Medicare Part C, the Medicare Advantage Plans are part of HHS for FOIA purposes, such that any document created or obtained by a Part C private insurer and controlled by a Part C private insurer is by definition created or obtained by HHS and controlled by HHS. *See* Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 2 ("Plaintiff's dispute is with the parameters that defendant set for the search. . . . It is plaintiff's position that the [Part C] plans are sufficiently entwined with HHS within the meaning and purpose of FOIA that the relevant documents must be searched and produced.").

The Center can point to no language in FOIA itself that supports its contention that CMS was required to seek out records from the Part C private insurers. Rather, the Center relies on HHS's regulation defining HHS to include Part A and Part B contractors for purposes of FOIA. *See* 45 C.F.R. § 5.5. Specifically, the Center argues that Part A, Part B, and Part C contractors are all "state actors" for the purposes of Medicare, that any of those contractors' training materials with regard to the improvement standard are thus "agency records," and that "[t]he

7

Court should not accord any credit to HHS'[s] failure to update its regulation [to include Part C plans]." Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 7-8. For several reasons, the Court finds that position unpersuasive.

First, because agency records include only records that both were created or obtained by the agency and are under the agency's control, it is not immediately clear that FOIA itself would obligate HHS to search for records held by *any* health insurance carriers and intermediaries that contract with HHS, whether those entities were contractors under Medicare Part A, Medicare Part B, or Medicare Part C. The 1987 regulation that defines HHS to include Part A and Part B contractors for FOIA purposes, 45 C.F.R. § 5.5, represents HHS's interpretation and application of 5 U.S.C. § 552(f)(1), the FOIA definition of "agency." Nothing indicates that the regulation codified a general principle that any private entity that contracts with an agency to administer the agency's programs is part of the agency for the purposes of FOIA. To the contrary, the regulation states:

> Agency means [the FOIA definition of agency at 5 U.S.C. § 552(f)(1)]. Thus, HHS is an agency. *A private organization is not an agency even if it is performing work under contract with the Government or is receiving Federal financial assistance. Grantee and contractor records are not subject to FOIA unless they are in the possession or under the control of HHS or its agents*, such as Medicare health insurance carriers or intermediaries. . . .
> Department or HHS means Department of Health and Human Services. It includes Medicare health insurance carriers and intermediaries to the extent they are performing functions under agreements entered into under [Medicare Parts A and B].

45 C.F.R. § 5.5 (emphasis added). Indeed, the Center admits that the regulation defines HHS to include Medicare Part A and Part B contractors, and does not define HHS to include Part C contractors. *See* Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 7-8 (arguing that the Court "should not accord any credit" to the agency' "failure to update its regulation"). Of

course, HHS is free to interpret the FOIA's definition of "agency" to mean that Part C plans are included within HHS for FOIA purposes. But HHS has not done so.[1]

Second, the Center relies heavily on the fact that the regulation that defines HHS to include Part A and Part B contractors for FOIA purposes was enacted before Medicare Part C was created. In fact, the Center argues that the only reason that the regulation does not include Part C as well is because it was promulgated in 1987, and Part C was not enacted until 1997. However, Part C has now existed for over thirteen years. HHS changes its regulations frequently, and the Court sees no reason why the agency would not have amended the 1987 regulation if it believed that Part C contractors should be treated like Part A and Part B contractors for FOIA purposes. Moreover, as HHS notes, there is a separate, detailed set of regulations that sets forth requirements regarding information that Part C contractors must disclose to insured parties and CMS. *Compare* 42 C.F.R. § 401.101(a) (stating that CMS's FOIA rules apply to "information obtained by Medicare intermediaries or carriers in the course of carrying out agreements under [Medicare Part A and Part B]," as well as to information obtained by CMS itself), *with* 42 C.F.R. § 504(b), (d)-(f) (requiring each Part C contractor to have the capacity to communicate with CMS electronically, and setting forth rules for Medicare Part C contractors' maintenance of records, provision of access to records, and disclosure of information).

The most logical explanation for the lack of any statute or regulation defining Part C plans as part of HHS for FOIA purposes is that neither Congress nor the agency believes that Part C plans are a part of HHS for FOIA purposes. As the Center's counsel acknowledged at oral argument, Medicare Part C functions differently from Medicare Parts A and B. Whether or not

---

[1] At oral argument, the Center's counsel admitted he had not thought of the possibility of attempting to persuade HHS to amend its FOIA regulations.

the exclusion of Part C contractors is the best policy, there is no basis for the Center's claim that distinguishing Part C contractors from Part A and Part B contractors for FOIA purposes is "irrational." Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 7.

Third, the Center's argument is based on the unsupported and legally confused premise that Part A and Part B contractors are incorporated into HHS for FOIA purposes under 45 C.F.R. § 5.5 because they are "state actors." *See id.* at 8. The state action doctrine developed in the context of *constitutional* law, in particular in the Fourteenth Amendment context. *See, e.g.*, Erwin Chemerinsky, *Rethinking State Action*, 80 Nw. U.L. Rev. 503, 507-09 (1985) (discussing the origins of the doctrine in the principle that "the Constitution offers no shield against private conduct" (quotation marks and citation omitted)). Indeed, the "state action" cases that the Center relies on involved alleged violations of constitutional rights, including rights under the Takings Clause of the Fifth and Fourteenth Amendments and the Commerce Clause of Article I, *see Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 311 (2d Cir. 2003); and procedural due process rights, *see, e.g., Kraemer v. Heckler*, 737 F.2d 214, 221-22 (2d Cir. 1984); *Catanzano v. Dowling*, 60 F.3d 113, 117 (2d Cir. 1995); *Grijalva v. Shalala*, 946 F. Supp. 747, 750-51 (D. Ariz. 1996), *aff'd* 156 F.3d 1115 (9th Cir. 1998), *vacated and remanded* 526 U.S. 1096 (1999). The state action doctrine is applicable, for example, in cases brought pursuant to 42 U.S.C. § 1983. *See Georgia v. McCollum*, 505 U.S. 42, 65 (1992) (deeming "the [§ 1983] 'under color of state law' requirement . . . identical to the Fourteenth Amendment's state action requirement"). At oral argument, the Center's counsel admitted that he knew of no other effort to use state action analysis in the FOIA context, and he could cite no case standing for the proposition that FOIA requires an agency to gather records from any contractor that would be deemed a "state actor" for

constitutional or § 1983 purposes.[2] The Court rejects the Center's attempt to graft the Fourteenth Amendment's "state action" requirement onto the standard for determining whether a document is an "agency record" under FOIA.

It also should be noted that the Center could point to only one case suggesting that Medicare Part C contractors should be regarded as state actors in *any* context. *See Grijalva v. Shalala*, 946 F. Supp. 747. That case did not actually involve contractors under Medicare Part C, but rather dealt with denials of services by Health Maintenance Organizations (HMOs) that dispensed coverage of medical care under a different section of the Medicare statute, 42 U.S.C. § 1395mm. *See id.* at 750. According to the Center, those HMOs were the "predecessors to Part C plans." Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 10. In addition, although the *Grijalva* district court found that the HMOs were state actors and thus bound by the Due Process Clause, *see Grijalva*, 946 F. Supp. at 754, and the district court's decision was affirmed by the Ninth Circuit, *see* 152 F.3d 1115, the Ninth Circuit's affirmance was vacated and remanded in light of *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999), which held that a workers' compensation insurer's decision to withhold payment for disputed medical expenses was not "state action" under the Fourteenth Amendment. *Id.* at 57-58; *see Shalala v. Grijelva*, 526 U.S. 1096 (1999). The parties in *Grijalva* settled before the district court had an opportunity to reconsider the case in light of *Sullivan*. *See* Order Approving Settlement, *Grijalva v. Shalala*, No. 4:93-cv-00711-ACM (D. Ariz. Dec. 5, 2000), ECF No. 200.

---

[2] In its initial Memorandum in Support of its Cross-Motion for Summary Judgment, the Center also made the argument that "Part C plans are 'Government controlled corporations' for purposes of FOIA." Mem. in Supp. of Pl.'s Cross-Mot. for Summary J. [doc. # 35] at 12; *see* 5 U.S.C. § 552(f) (defining "agency" to include any "Government controlled corporation"). At oral argument, however, the Center's counsel indicated that the Center had abandoned that argument. Regardless, even if the sponsors of Part C plans qualified as "Government controlled corporations" – which the Court does not concede – that would only mean that those insurers are subject to FOIA, not necessarily that *HHS* is required to seek out records from Part C plans.

Regardless, even if the Court were to find the *Grijalva* district court's analysis persuasive, that analysis is not applicable to the facts of this case.

### III.

For foregoing reasons, the Court concludes that the parameters that CMS set for the searches it conducted in response to the Center's request for records did not violate FOIA. CMS properly only searched for records that were both obtained or created by HHS and under the control of that agency, according to the FOIA definition of "agency" and HHS's FOIA regulations. The Court therefore GRANTS HHS's Motion for Summary Judgment [doc. # 24] and DENIES the Center's Cross-Motion for Summary Judgment [doc. # 32]. **The Clerk is directed to enter judgment for the Defendant and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 26, 2011.**